UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EMEKA DOMINIC OKONGWU,

        Plaintiff,

  -v-                                          14-CV-832WMS
                                                  ORDER
COUNTY OF ERIE, et al.,

        Defendants.
_____

## **INTRODUCTION**

Plaintiff, Emeka Dominic Okongwu, proceeding *pro se*, has filed a Second Amended Complaint (Docket No. 13) as directed by this Court and now moves for the issuance of a summons (Docket No. 14). For the reasons discussed below, the majority of Plaintiff's claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B); one may proceed to service.

## **DISCUSSION**

Plaintiff was granted permission to proceed *in forma pauperis*. (Docket No. 3). Section 1915(e)(2)(B) of 28 U.S.C. therefore requires the Court to conduct an initial screening of the Second Amended Complaint. In evaluating the Second Amended Complaint, the Court must accept as true all of the factual allegations and must draw all inferences in Plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). While "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), pleadings

submitted *pro se* must still meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004). "Specific facts are not necessary," and the Plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted)); *see also Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008) (discussing pleading standard in *pro se* cases: "even after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases"). Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas v. Dixon,* 480 F.3d 636, 639 (quoting *Gomez v. USAA Federal Savings Bank,* 171 F.3d 794, 796 (2d Cir. 1999) (*per curiam*)).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).

**Plaintiff's Allegations**

Plaintiff states that he and Doris Agbala had twin daughters in 1984, and that he became the sole caretaker of the two girls when she returned to her home country of Nigeria due to health concerns. (Docket No. 13, p. 4). Plaintiff was accused of sexual abusing his daughters in a Family Court proceeding in 1988. (*Id.* p. 5). Plaintiff alleges that he was cleared, but due to a finding of "negligence" the girls were placed in foster care and he was granted regular visitation. (*Id.*). The foster mother of the girls, Defendant Ollie McNair, made new allegations of sexual abuse against Plaintiff based on statements that she claimed the girls had made to her. (*Id.* p. 6). On February 1, 1994, Plaintiff was indicted, "along with two other individuals, with a slew of criminal conducts, including but not limited to multiple counts of sexual abuse[ ] of his own twin daughters." (*Id.*). Plaintiff was later convicted. The conviction was reversed in 2010, but Plaintiff remained incarcerated until December of 2011 when the state determined that he would not be retried. Plaintiff states that "[h]is arrest and conviction record have also been expunged." (*Id.*).

Plaintiff alleges that Defendant McNair lied about the alleged evidence of sexual abuse, and claims that (non-Defendant) Deborah Merriefield, identified as the then Commissioner for the Erie County Department of Social Services, "failed to train, supervise or discipline Ollie McNair in matters of managing and observing affairs of the children under her ward". (*Id.* p. 7).

Plaintiff next accuses Sheriff Howard of failing to properly investigate the false allegations. (*Id.* p. 8). Plaintiff notes that there were allegations that blood was found

3

on the mattress identified as the site of the abuse, as well as "sexual abuse paraphernalia in that basement." (*Id.*). Plaintiff alleges that Defendant Howard was deliberately indifferent and as a result "falsely arrested, maliciously prosecuted and falsely imprisoned" Plaintiff. (*Id.* p. 9). Plaintiff likewise accuses then Erie County District Attorney Sedita and Assistant District Attorneys Cooper and Bridge of coercing and coaching the twins. (*Id.*). Plaintiff alleges that Defendants Cooper and Bridge "knew or should have known" that the testimony of the twins concerning sexual abuse was false. (*Id.* p. 10). Plaintiff accuses Assistant District Attorney Flaherty of holding Plaintiff in jail for nearly two years, presumably referring to the time between the reversal of Plaintiff's conviction and the decision to end the prosecution. (*Id.*).

Regarding Defendant Dr. Lazoritz, Plaintiff alleges that he falsely confirmed damage to the hymen of one of the girls, when "he knew or should have known" that the damage existed "prior to the dates of the allegations." (*Id.* p. 11).

Plaintiff alleges in purely conclusory terms that all Defendants except Leary conspired to deprive him of his constitutional rights. (*Id.*). Similarly, Plaintiff makes a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") U.S.C. § 1961 *et seq.* (*Id.*). Plaintiff's RICO allegations consist of a repetition of his claims against each Defendant "in the enterprise of aiding two or more corrupt organization members to attain monetary gain in the excess of $10,000 for services to be rendered in relation to plaintiff's twins." (*Id.*). While unspecified, this appears to refer to the money paid to foster parent McNair.

4

Finally, Plaintiff sets forth allegations regarding his treatment while confined, alleging that Defendant Leary and others failed to protect him when he was "on numerous occasions [attacked] and brutally beaten by fellow inmates." (*Id.* p. 12). Plaintiff provides no further details as to the alleged assaults or the year in which they occurred. Plaintiff also alleges the loss of various documents and other items of personal property at an unspecified time through unspecified means.

**Claims Against Foster Parent McNair**

Plaintiff alleges that Defendant McNair, who acted as a foster parent to Plaintiff's daughters, made false statements to the police about his daughters. Plaintiff appears to concede certain corroborating facts including blood on a basement mattress and items associated with sexual abuse, but alleges that Defendant McNair's lies were the basis of the prosecution against him. Plaintiff characterizes Defendant McNair as "an official of the Erie County Department of Social Services," but this seems to refer only to her role as a foster parent. (Docket No. 13, p. 3, 5).

In order to recover in an action under § 1983, a plaintiff must show a deprivation of his constitutional or statutory rights by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Bryant v. Maffucci*, 923 F.2d 979, 982-83 (2d Cir. 1991). Therefore, it is necessary to examine whether Defendant McNair, as foster parent to Plaintiff's daughters, could be considered to be a person acting under color of state law. In order to meet this standard, a person must have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Polk County v. Dodson*, 454 U.S. 312, 317-18

(1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Similarly, as is the case in the context of the Fourteenth Amendment's state action requirement, a deprivation of a federal or constitutional right is actionable pursuant to § 1983 when the deprivation was caused "by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). "Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West*, 487 U.S. at 50.

"Courts of Appeals that have examined whether foster parents are state actors under Section 1983 have resoundingly answered in the negative." *Smith v. Gristina*, 11 CV 2371 VB, 2012 WL 247017, at *3 (S.D.N.Y. Jan. 6, 2012) (collecting cases). Further, a private citizen who files a police report is not acting under color of state law. *Carrillos v. Inc. Vil. of Hempstead*, 87 F. Supp. 3d 357 (E.D.N.Y. 2015). Thus, Defendant McNair is not, by virtue of being a foster parent, considered an employee of the County of Erie, nor did she act under color of state law by contacting the police.

Although a private actor may act under color of state law when she is a willful participant in joint activity with the state or its agents, a "merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002). Plaintiff alleges that Defendant McNair, by falsely reporting his daughters' allegations, "initiated this witch hunt". (Docket No. 13, p. 8). Plaintiff then alleges that law enforcement conducted an improper investigation and that the

6

prosecution used "fabricated evidence that was initially brought to the authorities by Ollie McNair." (*Id.* p. 9).

These allegations, presumed true at this stage of the proceedings, fail to establish that Defendant McNair was a state actor subject to suit under § 1983. As noted, Defendant McNair did not act under color of state law as a foster parent, and she did not act under color of state law when she reported the accusation against Plaintiff – whether true or false – to the police. Nor do Plaintiff's allegations establish that she was a willful participant in joint activity with the state or its agents. Plaintiff alleges that Defendant McNair lied and that the authorities based their prosecution on those lies, but nothing further is alleged that would establish ongoing participation in the prosecution, or otherwise support the claim that Defendant McNair operated under color of state law. Plaintiff's § 1983 claims against Defendant McNair are therefore dismissed.

**Claims Against the District Attorney and Assistant District Attorneys**

Plaintiff brings claims against then District Attorney Frank A. Sedita III as well as assistant district attorneys Bridge, Cooper, and Flaherty. It is well-settled that prosecutors sued under 42 U.S.C. § 1983 are entitled to absolute immunity "from claims for damages arising out of prosecutorial duties that are 'intimately associated with the judicial phase of the criminal process.'" *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Thus, prosecutors are "shielded from liability for damages with respect to acts performed within the scope of [their] duties when pursuing a criminal prosecution." *Doe*, 81 F.3d at 1209.

> To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system.

*Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976).

All of the claims raised by Plaintiff against the prosecutorial Defendants are based on acts performed within the scope of their duties pursuing the criminal prosecution against him. Plaintiff alleges that witnesses were coerced and coached in the initial prosecution "on several occasions up until trial, to go on with the fabricated evidence that was initially brought to authorities by Ollie McNair." (Docket No. 13, p. 9). Plaintiff further alleges that Defendants Cooper and Bridge "knew or should have known" that the testimony of the two girls was "manufactured by Ollie McNair". (*Id.* pp. 9-10).

Plaintiff accuses Defendants of coercion "committed during an [administrative] part of their prosecutorial" activities. (*Id.* p. 10). It is true that absolute immunity does not extend "to a prosecutor's investigative or administrative acts". *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981). However, "the falsification of evidence and the coercion of witnesses, or the failure to drop charges until immediately before trial have been held to be prosecutorial activities for which absolute immunity applies." *Taylor,* 640 F.2d at 452 (citations omitted); *see also, Deats v. Monroe County*, 10-CV-6473-FPG, 2014 WL 6769756, at *4 (W.D.N.Y. Dec. 1, 2014). Here, Plaintiff's allegations clearly place blame on Defendant McNair for manufacturing evidence. The prosecutors appear to be accused of mere negligence in failing to recognize the nature of this

8

evidence, and in using coercion to pursue the prosecution. Even if Plaintiff's allegations were read to allege the prosecutors' full knowledge that the allegations were false and the girls' testimony fabricated, prosecutors have absolute immunity even where they "conspir[e] to present false evidence at a criminal trial". *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir 1994). Thus, presuming all of Plaintiff's factual allegations in the Second Amended Complaint to be true, Defendants Sedita, Cooper, and Bridge remain absolutely immune from suit. *See Dory*, 25 F.3d at 83 ("absolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate").

Plaintiff further alleges that Defendant Flaherty "held plaintiff in jail for almost 2 years" after "plaintiff's daughters, his only witnesses had recanted their testimony". (Docket No. 13, p. 9). While a prosecutor may request bail, the fixing of bail is a judicial decision. *See generally* N.Y. Crim. Proc. Law § 510.10. Thus, the allegation against Defendant Flaherty relates to the determination whether and when to cease the prosecution after two witnesses had recanted. The decision to continue a prosecution or to end it is an act performed within the scope of a prosecutor's duty in pursuing the criminal prosecution. *See Taylor,* 640 F.2d at 452.

Therefore, the claims brought by Plaintiff against Defendants Sedita, Bridge, Cooper, and Flaherty are barred by the absolute immunity enjoyed by prosecutors, and are dismissed with prejudice for failure to state a claim on which relief may be granted.

**Claims Against Sheriff Howard**

Plaintiff next brings claims against Timothy B. Howard, Sheriff of Erie County, alleging that the Defendant Howard "failed to train, supervise and/or discipline" sheriff's employees to avoid coercing and coaching witnesses or using "false evidence". (Docket No. 13, p. 9). Defendant Howard is the sole law enforcement official named as a Defendant in the Second Amended Complaint outside the District Attorney's Office. The Defendant is alleged to have "received [ ] manufactured evidence of sexual abuse and rape," for which he "woefully failed to order proper investigation". (*Id.* p. 8). As to the blood on the mattress and "sexual abuse paraphernalia", Plaintiff alleges that the Sheriff's office failed to properly secure them as evidence, if they existed. (*Id.*). Plaintiff characterizes these failures as deliberate indifference.

In order to prevail on a § 1983 claim against a state actor for malicious prosecution, "a plaintiff must show a violation of his rights under the Fourth Amendment, and establish the elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (citations omitted). "To establish a malicious prosecution claim under New York law, a plaintiff must show that a proceeding was commenced or continued against him, with malice and without probable cause, and was terminated in his favor." *Fulton*, 289 F.3d at 195.

Here, Plaintiff alleges that law enforcement personnel were presented with false claims by Defendant McNair that Plaintiff's daughters had accused him of sexual abuse. "In general, probable cause to arrest exists when an officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in

themselves to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Marshall v. Sullivan*, 105 F.3d 47, 54 (2nd Cir. 1996) (*citing Dunaway v. New York*, 442 U.S. 200, 208 n. 9 (1979)). Even assuming *arguendo* that the law enforcement officers involved failed to properly secure the evidence from the basement, such evidence, coupled with the statements by Defendant McNair, was more than sufficient to establish probable cause.

Additionally, Plaintiff has set forth no allegations whatsoever that would support the element of malice against this Defendant. This is because Plaintiff has not set forth factual allegations that show the personal involvement of Defendant Howard in any of the acts alleged, which is a prerequisite for liability under § 1983. *See Spencer v. Doe*, 139 F.3d 107, 112 (2d Cir. 1998). Instead, Plaintiff's allegations against Defendant Howard are that the "the deliberate indifference of Timothy B. Howard and the John and Jane Does of the Sheriff's office" to Plaintiff's constitutional rights caused him to be falsely arrested and maliciously prosecuted. (Docket No. 13, pp. 8-9). (There are no John or Jane Doe Defendants named in the Second Amended Complaint.) Accordingly, Plaintiff's claims against Defendant Howard are dismissed with prejudice for failure to state a claim on which relief may be granted. Plaintiff's claims against the Erie County Sheriff's Department as an organization are addressed below.

**Claims Against Dr. Lazoritz**

Plaintiff characterizes his allegations against Defendant Dr. Lazoritz as a claim that the doctor testified falsely. However, Plaintiff's factual allegation is that Defendant confirmed damage to the hymen of one of the daughters "whereas he knew or should

11

have known" that the damage predated the allegations against Plaintiff. (Docket No. 13, pp. 10-11). Plaintiff alleges, therefore, no more than that the doctor's testimony was mistaken, or incomplete. This establishes only negligence, which is not an actionable claim under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 330-31 (1986) (mere negligence is not actionable under § 1983). The claims against Defendant Lazoritz are therefore dismissed with prejudice.

**Claims Against the City of Buffalo**

It is unclear on what basis the Plaintiff makes claims against Defendant the City of Buffalo. The Second Amended Complaint fails to set forth any allegations against this Defendant. Therefore, all claims against the City of Buffalo are dismissed with prejudice.

**Racketeering Claims**

The Second Amended Complaint also includes claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") U.S.C. § 1961-1968, alleging that all Defendants engaged in a "pattern of racketeering". (Docket No. 13, p. 11). A plaintiff's conclusory allegation of a RICO violation, without more, fails to state a claim upon which relief may be granted. *See e.g. Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987). For a plaintiff to adequately plead a claim of Racketeering:

> First, he must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962 (1976), commonly known as "criminal RICO." In so doing, he must allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.

12

*Moss v. Morgan Stanley Inc.*, 719 F2d 5, 17 (2d Cir 1983) (citation omitted).

Plaintiff's conclusory allegations do not meet even the preliminary requirements of a RICO claim, alleging only that Defendants used the postal service to communicate with each other. This fails to set forth any allegations of activities that would meet the definition of "racketeering activity" enumerated in 18 U.S.C. § 1961(1) or would otherwise satisfy the requirements of a RICO claim. The racketeering claims are therefore dismissed with prejudice.

**Claims Against Defendant Leary**

Plaintiff makes claims against Defendant Leary and the Erie County Holding Center for failure to intervene and protect. Plaintiff alleges that he was beaten and that an inmate was convicted of assault for one such beating, but no further allegations are set forth regarding the circumstances. The Second Amended Complaint does not include even an allegation as to the year in which the relevant events took place.

Plaintiff makes his claim under the Eighth Amendment, which requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). The assessment of whether or not the measures taken are reasonable turns on an analysis of two factors. First, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. Second, the officials must be shown to have demonstrated a deliberate indifference to the inmate's safety. *Id.* Deliberate indifference must be measured subjectively, that is:

> [A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to [the] inmate['s] health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. Plaintiff states in a conclusory fashion that Defendant failed to protect him from harm and showed deliberate indifference, but the allegations are devoid of facts that would support his claims and set forth no basis to conclude that Defendant was aware of a substantial risk of harm. Moreover, there are no allegations that would establish Defendant Leary's personal involvement of in a constitutional violation. *See Spencer*, 139 F.3d at 112. Accordingly, all claims against Defendant Leary are dismissed with prejudice.[1]

Plaintiff further alleges, in conclusory terms, that he lost items of property while confined. The allegation of deprivation of property implicates a plaintiff's Fourteenth Amendment right to due process and equal protection of the laws. Again, Plaintiff does not provide facts in support of this claim or the year in which the alleged deprivations occurred. At his most specific allegation, Plaintiff claims that the Erie County Holding Center failed to turn over items of property when he was released.

It well-recognized that:

> an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available.

---

[1] Because Plaintiff's allegations are devoid of facts, it is unclear whether his claims pertain to time while he was a sentenced prisoner or a pre-trial detainee. Even under the more protective due process standard of the Fourteenth Amendment applicable to non-sentenced prisoners, Plaintiff has failed to state a claim. *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017).

14

*Hudson v. Palmer*, 468 U.S. 517, 533 (1984). New York provides such a remedy in § 52 of the New York County Law. Assuming that Plaintiff was deprived of property within the meaning of the Fourteenth Amendment, the deprivation was not without due process of law because New York provides an adequate post-deprivation remedy. *Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983). Because Plaintiff had an adequate remedy under state law, the claims regarding the conversion of his property are dismissed with prejudice.

**False Arrest and Imprisonment Claims**

In New York State, Section 1983 claims have a three year statute of limitations pursuant to New York's CPLR § 214(2).[2] *Owens v. Okure*, 488 U.S. 235, 251 (1989); *see also Jewell v. County of Nassau*, 917 F.2d 738, 740 (2d Cir. 1990). False arrest and imprisonment claims accrue upon the commencement of a criminal prosecution. *Wallace v. Kato*, 549 U.S. 384, 389 (2007) ("a false imprisonment ends once the victim becomes held pursuant to [legal] process—when, for example, he is bound over by a magistrate or arraigned on charges"). As alleged in the Second Amended Complaint, Plaintiff was indicted on February 1, 1994. (Docket No. 13, p. 6) The three year period for the false arrest and imprisonment claims therefore expired at least 17 years before Plaintiff filed his Complaint on October 8, 2014. (See Docket No. 1) Accordingly,

---

[2] Although the statute of limitations is an affirmative defense, and must generally await a defense motion, dismissal is appropriate when the facts supporting the statute of limitations defense are set forth in the papers that a plaintiff submits. *See Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980)); *see also Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (noting that, for purposes of an initial review under 28 U.S.C. § 1915, a court may find that a complaint is based on an indisputably meritless legal theory if an affirmative defense, such as the statute of limitations, "appears on the face of the complaint").

because the statute of limitations has long since expired, Plaintiff's claims for false arrest and imprisonment are dismissed. [3]

**Claims Against the County of Erie**

Read generously, Plaintiff's allegations in the Second Amended Complaint lay blame not only on Defendant Howard, but also on the Erie County Sheriff's Department generally for failure to properly train its employees. (Docket No. 13, pp. 8-10). Plaintiff alleges that unnamed Sheriff's Deputies actively took part in his prosecution and that his alleged malicious prosecution was a product of the failure of Defendant Erie County to properly train and monitor its employees. Plaintiff further alleges that the malicious prosecution was a violation of his Fourth and Fourteenth Amendment Rights.

Municipalities are considered "persons" for purposes of 42 U.S.C. § 1983, but a local government such as the County of Erie generally cannot be held liable under § 1983 unless the challenged action was performed pursuant to a municipal policy or custom. *Monell*, 436 U.S. at 694. Municipalities are not subject to § 1983 liability solely on the basis of a *respondeat superior* theory. *Collins v. City of Harker Heights*, 503 U.S. 115, 121 (1992); *Monell*, 436 U.S. at 694. To hold a municipality liable in a § 1983 action, a plaintiff is required to plead and prove three elements: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (citations and quotations omitted); *see Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) ("In order to establish the liability of a municipality in an action under § 1983 for unconstitutional acts

---

[3] By contrast, Plaintiff's malicious prosecution claim could not be brought, and did not accrue, until the prosecution was terminated in Plaintiff's favor, which he alleges took place in December 2011. *Heck v. Humphrey*, 512 U.S. 477, 484 (1994).

by a municipal employee below the policymaking level, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy.").

Although the failure to train is not itself an independent constitutional violation, *Monell* can also be the basis for liability where a municipality fails to properly train its employees. As the Second Circuit has noted, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original).

Here, Plaintiff alleges that employees of the Erie County Sheriff's Department, either prior to or in conjunction with Erie County Assistant District Attorneys, took part in his prosecution by, *inter alia*, influencing Plaintiff's daughters to falsely implicate Plaintiff and his co-defendants. While these employees are not themselves individual Defendants in this action, Plaintiff's allegations, presumed to be true at this stage of the proceedings, could establish the independent constitutional violation required by *Monell*. If these violations were in turn shown to be the product of a failure to train on the part of Erie County, Defendant's liability could be established. Accordingly, Plaintiff's claim of a failure to train on the part of Defendant County of Erie, and the resulting alleged malicious prosecution, may proceed to service at this early stage. Plaintiff's Motion for Service (Docket No. 14) is therefore granted in part.[4]

---

[4] In allowing these claims to proceed and directing a response to them, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

## CONCLUSION

For the reasons set forth above, some of Plaintiff's claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B). All claims against Defendants McNair, Sedita, Cooper, Bridge, Flaherty, Howard, Lazoritz, the City of Buffalo, and Defendant Leary are dismissed with prejudice. Plaintiff's claims under RICO, due process claims, claims of false arrest and false imprisonment, conspiracy, all claims regarding a failure to intervene or protect, and all claims regarding loss of property while incarcerated are dismissed with prejudice. Plaintiff's claims of malicious prosecution are dismissed against all Defendants except the County of Erie, and those claims arising from the alleged failure to train employees of the Erie County Sheriff's Department may proceed to service.

## ORDER

IT IS HEREBY ORDERED, that Plaintiff's due process claims, claims of false arrest and false imprisonment, claims of malicious prosecution against all Defendants except the County of Erie, claims of conspiracy and RICO violations, and failure to intervene and protect are hereby dismissed with prejudice;

FURTHER; that the Motion for Service (Docket No. 14) is GRANTED in part consistent with this Decision and Order;

FURTHER, that the Clerk of Court is directed to cause the United States Marshal to serve copies of the Summons, Second Amended Complaint (Docket No. 13), and this Order upon Defendant County of Erie without Plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor;

FURTHER, the Clerk of Court is directed to terminate all other Defendants as parties to this action;

FURTHER, that, pursuant to 42 U.S.C. § 1997e(g), the Defendant is directed to answer the Second Amended Complaint.

SO ORDERED.

/s/William M. Skretny
William M. Skretny
United States District Judge

DATED:   June 21, 2017
         Buffalo, NY