UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EMEKA DOMINIC OKONGWU,

    Plaintiff,

v.

COUNTY OF ERIE,

    Defendant.

**DECISION AND ORDER**

14-CV-832S

## I.  INTRODUCTION

In this action, Plaintiff Emeka Okongwu seeks damages from Erie County for violating his constitutional rights when Erie County sheriff's deputies coerced his daughters to testify falsely against him in a sexual assault prosecution that resulted in his extended incarceration. Before this Court is Defendant's motion for summary judgment (Docket No. 66), which this Court will grant, for the following reasons.

## II.  BACKGROUND

Unless otherwise noted, the following facts are undisputed for purposes of the motion for summary judgment. This Court takes the facts in the light most favorable to Okongwu, the non-moving party. See Mitchell v. City of New York, 841 F.3d 72, 75 (2d Cir. 2016) (at summary judgment, a court "views the evidentiary record in the light most favorable to ... the non-moving party").

On December 21, 1992, a grand jury indicted Okongwu for rape in the first degree, incest, sodomy in the first degree, sexual abuse in the first degree, endangering the welfare of a child, and harassment. (Docket No. 66-11 at p. 2; Certificate of Discharge, Docket No. 66-12 at p. 2.) Okongwu's daughters both testified at his trial that he had

1

abused them. (Affidavit of Chendo Okongwu, Docket No. 66-10 at p. 11.)

Okongwu's daughters assert in sworn affidavits that "law enforcement officials" and prosecutors told them to testify falsely against their father and threatened them with deportation to Africa if they did not memorize false facts provided to them about their father's sexual abuse. (Affidavit of Nnedi Okongwu, Docket No. 66-10 at pp. 5-7; Affidavit of Chendo Okongwu, Docket No. 66-10 at pp. 11-13.) Both daughters assert that unnamed "law enforcement authorities" paid them for their false testimony. (Id. at pp. 6, 12.)

Okongwu was sentenced to 35 to 107 years imprisonment as a result of this prosecution. (Docket No. 66-5 at p. 8.) He served approximately 16 years of his sentence. (Id.) On December 15, 2011, the New York Appellate Division, Fourth Department, vacated Okongwu's judgment of conviction on the basis of ineffective assistance of counsel. (Erie County Statement of Material Facts, Docket No. 66-2 at p. 2; Okongwu Statement of Undisputed Facts, Docket No. 69-1 at p. 2.) The Fourth Department based its holding on Okongwu's counsel's failure to proffer favorable evidence or call an expert and on the inconsistent testimony of his daughters. (People v. Okongwu, 71 A.D.3d 1393, at Docket No. 66-11.) The Fourth Department found "reasonable evidence that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Docket No. 66-11 at p. 4.)

Okongwu brought this action on October 8, 2014, asserting multiple constitutional claims against multiple defendants. (Docket No. 1.) Because Okongwu was proceeding *in forma pauperis*, this Court screened his Amended Complaint pursuant to 28 U.S.C. § 1915. (Docket No. 12.) This Court dismissed Okongwu's claims against the Erie County

District Attorney's Office, the Erie County Sheriff's Office, the Erie County Department of Social Services, and the City of Buffalo Police Department. (Docket No. 12.) In a further screening order, this Court dismissed all but one of the claims in the Second Amended Complaint. (Docket No. 15.) This Court read Okongwu's complaint "generously" as asserting that his alleged malicious prosecution "was a product of the failure of Erie County to properly train and monitor its employees." (Id. at p. 16.) Implicit in this statement was this Court's finding that the County, not the Sheriff's Office, could be a proper defendant for this cause of action.

Okongwu's remaining claim is for malicious prosecution against Erie County. Okongwu asserts that "undersheriffs of the Sheriff's Department arrested him, procured his two daughters and coerced, coached and intim[id]ated them while paying them when the process of fabrication of evidence against Plaintiff went well." (Docket No. 69-1 at p. 4.) Erie County does not assert that this did not happen, but rather, argues that it does not employ Erie County sheriff's deputies and has no policy related to the training or conduct of sheriff's deputies.

### III.  DISCUSSION

Okongwu claims that Defendant violated his Fourth Amendment right to be free from malicious prosecution when it failed to train sheriff's deputies not to coerce his daughters to testify falsely against him. He seeks compensatory and punitive damages from the County on this basis.

Defendants move for summary judgment on Okongwu's claim.

**A.     Summary Judgment**

Summary judgment is appropriate if "the movant shows that there is no genuine

3

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion."  Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper."  Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004) (citations omitted).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment.  Anderson, 477 U.S. at 252.  A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading...."); D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998).  That is, there must be evidence

4

from which the jury could reasonably find for the non-moving party.  See Anderson, 477 U.S. at 252.

In the end, the function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

**B.    Federal Constitutional Claim**

Okongwu brings his claim pursuant to 42 U.S.C. § 1983. Civil liability is imposed under § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws.  See 42 U.S.C. § 1983. On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in federal statutes and the Constitution.  See Graham v. Connor, 490 U.S. 386, 393-94,109 S. Ct. 1865, 1870, 104 L. Ed. 2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979)).  Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged.  See Baker, 443 U.S. at 140.  Here, Okongwu's malicious prosecution claim is grounded in the Fourth Amendment.

**C.    Municipal Liability**

To prevail on a § 1983 claim against a municipal entity, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the

5

constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008). Thus, "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012). "The Supreme Court has made clear that 'a municipality cannot be made liable' under § 1983 for acts of its employees 'by application of the doctrine of *respondeat superior*.'" Roe, 542 F.3d at 36 (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 478, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 60–61, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (citing Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). While the actions of subordinate employees do not, in and of themselves, constitute a "custom" or "practice," the single act of a municipal policymaker, *i.e.,* a person with the authority to set municipal policy, can constitute official policy, and thus, can give rise to municipal liability. See Pembaur, 475 U.S. at 480. Additionally, a municipal policymaker's failure to train can trigger municipal liability where such a failure "'amounts to deliberate indifference to the rights' of those with whom municipal employees will come into contact." Walker v. City of New York, 974 F.2d 293, 297 (2d. Cir.1992) (quoting City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989)). But the "mere assertion that a municipality has such a policy is insufficient to establish Monell liability," and a plaintiff "may not overcome summary judgment by relying merely on allegations or denials in its

own pleading." Manganiello v. City of New York, No. 07 Civ. 3644(HB), 2008 WL 2358922, at *9–10, 2008 U.S. Dist. LEXIS 44765, at *29–30 (S.D.N.Y. June 10, 2008). See also Southerland v. Garcia, 483 F. App'x. 606, 609 (2d Cir. 2012) ("summary judgment was proper on the remaining claims against the City. Plaintiffs have failed to allege, let alone present any evidence of, an official custom or policy such as is necessary to establishing liability under Monell...."); Jackson v. Cnty. of Nassau, No. 07–CV–245 (JFB)(AKT), 2010 WL 1849262, at *11, 2010 U.S. Dist. LEXIS 44344, at *35–36 (E.D.N.Y. May 6, 2010) (granting summary judgment in favor of county on plaintiff's Monell claim, because the "mere assertion that a municipality has such a policy is insufficient to establish Monell liability," and "in any case Plaintiff may not overcome summary judgment by relying merely on allegations or denials in its own pleading.").

The County argues that Okongwu has not identified a policy under any of the above theories of liability.

First, the County argues that Okongwu has not offered any evidence of the existence of a policy or custom pursuant to which he was injured. This Court agrees. Okongwu submits printouts regarding ten local defendants who were later exonerated, but none of these cases constitutes evidence from which a reasonable jury could find a County policy of encouraging false witness testimony. (See Docket No. 69 at pp. 12-15.)

The case of Valentino Dixon involves, as Okongwu's briefing states it, an unnamed "official of the police" forcing a witness to falsely identify Dixon as a murderer. (Docket No. 69 at p. 12; see also Docket No. 69-3 at pp. 2-4.) Okongwu states that Dixon is currently suing Erie County, but does not specify under what theory of liability. And the mere filing of a lawsuit does not prove liability. Okongwu states that Warith Habib Abdal

7

"settled a lawsuit with Erie County," and that "Erie County was liable," (Docket No. 69 at p. 12), but the printout Okongwu attaches from the National Registry of Exonerations states that Abdal's estate ultimately settled with the City of Buffalo, undercutting Okongwu's assertion of Erie County's responsibility for any violation. (Docket No. 69-3 at pp. 5-6.)

The case of Peter Dombrowski involves a police lineup and the gathering of fingerprints but it is not clear from Okongwu's submission what law enforcement agency was involved. (Docket No. 69-3 at p. 7.) In the case of Cory Epps, Okongwu states that "Erie County law enforcement" withheld evidence of mistaken identity, and that "Erie County was liable," but the document he submits states that Epps subsequently sued the City of Buffalo, not Erie County. (Docket No. 69-3 at p. 9.) Although Okongwu asserts that "Erie County was liable" in the case of Nathanial Johnson, the exoneration printout does not point to any misconduct. (Docket No. 69-3 at pp. 10-11.) Okongwu asserts that "law enforcement in Erie County coerced a confession" from Josue Ortiz, and that "Erie County was liable," (Docket No. 69 at pp. 13-14), but the exoneration printout suggests that Ortiz testified falsely due to mental illness, and that he subsequently sued the City of Buffalo in federal court. (Docket No. 69-3 at p. 13.) Okongwu asserts that "authorities lied to obtain the conviction" of Michael White, but the documentation he submits suggests that White was exonerated based on later, more sophisticated DNA testing of semen samples. (Docket No. 69 at p. 15.)

In his memorandum, Okongwu also mentions the cases of Anthony Capozzi, Jerome Thagard, and Lynn Dejac, but does not provide any supporting documentation. (See, e.g., Docket No. 69 at p. 14, "Anthony Capozi(sic). This wrongful conviction case

8

was caused by police misconduct. Erie County was liable."). In all instances, Okongwu asserts, "Erie County was liable." (Docket No. 69 at pp. 12-15.)

Okongwu also mentions a 300-page report by the International Association for Police Chiefs "voicing concern about official misconduct of the officials of the county of Erie." (Docket No. 69 at p. 15.) But he does not submit any part of this report that supports this proposition, nor does he demonstrate that Erie County was aware of and disregarded this report, or that the misconduct allegedly detailed in this report relates to any injury he suffered.

None of Okongwu's assertions or documentation constitutes evidence from which a jury could find an Erie County custom of coercing or coaching of false testimony by sheriff's deputies, the conduct at issue in his case.

Regarding the second theory of Monell liability, Okongwu does not provide evidence of any acts by policymakers. He asserts that unnamed sheriff's deputies coached his daughters to testify falsely against him. In his deposition, when asked to identify the particular actors who did this, he stated "all the sheriffs in Erie county." (Okongwu Deposition, Docket No. 66-7 at p. 7.) His daughters' affidavits state that "law enforcement officials" coached and bribed them to testify falsely. (See, e.g., Affidavit of Nnedi Okongwu, Docket No. 66-10 at pp. 5-7.) Taken together, this is insufficient evidence from which a reasonable jury could conclude that the officers who "coached" his daughters were policymakers.

Third, he does not provide evidence of a custom or practice that was tolerated or gained the force of an official policy. The existence of 10 incidents where defendants were exonerated does not establish a custom that gained the force of an official policy, just as

it did not establish the existence of an official policy or custom. To establish liability under this theory, Okongwu would have to demonstrate both that constitutional violations occurred, and that the County was aware of them and failed to remedy them, thereby tolerating them. This argument fails, apart from the fact that the examples do not implicate coercion of false testimony by sheriff's deputies, because it is not clear that Erie County was aware of these actions such that it tolerated a custom.

It is well established that contemporaneous or subsequent instances of constitutional violations cannot be used to demonstrate a municipality's awareness of an issue and consequent duty to remedy it. O'Neal v. City of New York, 196 F. Supp. 3d 421, 435 (S.D.N.Y. 2016), aff'd sub nom. O'Neal v. Morales, 679 F. App'x 16 (2d Cir. 2017) (citing Connick, 563 U.S. at 63 n. 7 ("[C]ontemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the cit[y] and the opportunity to conform to constitutional dictates ...' )(quoting City of Canton, 489 U.S. at 395)).

Okongwu's daughters assert that they were coached by law enforcement officials "in advance of [their] father's trial in November 1993." (Docket No. 66-10 at pp. 3, 5.) Of the examples Okongwu submits, only three predate his 1993 prosecution. Dombrowski went on trial in 1985—but the issue was withholding of evidence. (Docket No. 69-3 at p. 7.) Although Valentino Dixon was convicted in 1995, the conduct appears to have been by Buffalo police. (Id. at p. 3.) Later DNA evidence, not County actions, appear to have exonerated Abdal. (Id. at pp. 14-15.)

In short, Okongwu has failed to submit admissible evidence for the proposition that the County or sheriff's department tolerated a practice of sheriff's deputies coercing or

10

coaching witnesses to falsely testify, and his argument on this theory of municipal liability fails.

Turning to the final theory of municipal liability, Okongwu does not provide evidence from which a jury could determine that the County failed to train sheriff's deputies in proper and constitutional methods of preparing witnesses. The Second Circuit and Supreme Court have established that to succeed on a failure-to-train claim a plaintiff must "establish not only that the officials' purported failure to train occurred under circumstances that could constitute deliberate indifference, but also that plaintiffs identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 129–30 (2d Cir. 2004) (quoting City of Canton, 489 U.S. at 391). In other words, a plaintiff must establish that "the officer's shortcomings ... resulted from ... a faulty training program" rather than from the negligent administration of a sound program or other unrelated circumstances. Id.

Okongwu has proffered no evidence of the County's training programs or advanced any theory as to how a training deficiency caused the unnamed sheriff's deputies to coach and coerce his daughters to testify falsely. Plaintiffs' failure-to-train theory is based solely on his daughters' sworn statement that unnamed "law enforcement officials" bribed, coerced, and coached them to lie about their father's actions. But this is not sufficient to establish that these actions stemmed from improper training (whether negligent or deliberately indifferent) and not from the independent decisions of individual officers.

At the summary judgment stage, Okongwu cannot rest on the allegations of his

complaint. Nothing he submits would suffice to persuade a reasonable jury that failure of training caused his injuries. See Southerland, 483 F. App'x. at 609 (holding summary judgment proper where plaintiffs "failed to allege, let alone present any evidence of, an official custom or policy such as is necessary to establishing liability under Monell...."); Jackson, 2010 WL 1849262, at *11 (granting summary judgment in favor of county on plaintiff's Monell claim, because the "mere assertion that a municipality has such a policy is insufficient to establish Monell liability," and "in any case Plaintiff may not overcome summary judgment by relying merely on allegations or denials in its own pleading") .

Under these circumstances, a reasonable jury could not find the County liable under Monell for any constitutional violation Okongwu may have suffered.

**D.  Because there is no evidence of a policy, the County's legal relationship to the Sheriff's Office is not a relevant inquiry.**

The County's main argument in moving for summary judgment is that the County does not employ, direct, or make policies governing the sheriff's deputies, so that it cannot be held liable for any constitutional violations on their part. But regardless of who ultimately controls the actions of the sheriff's deputies, Okongwu has failed to demonstrate the existence of a policy pursuant to which he was injured. This Court grants summary judgment because a reasonable jury could not find that any municipal policy caused Okongwu's alleged constitutional injury. It does not reach the merits of Defendant's argument that a county cannot, as a matter of law, be held liable for the actions of a sheriff's deputy. This Court has rejected this argument, and in the Second Circuit, courts have held that a sheriff's office *can* act as a policymaker for a county for the purposes of liability under § 1983. (See Docket No. 23 at p. 5; see also Jeffes v. Barnes, 208 F.3d 49 (2d Cir. 2000); Leather v. Ten Eyck, 2 F. App'x 145 (2d Cir. 2001)

(finding that a county could be sued under § 1983 for sheriff's practices); Dudek v. Nassau Cty., 991 F. Supp. 2d 402, 413 (E.D.N.Y. 2013); Lin v. Cty. of Monroe, 66 F. Supp. 3d 341, 351 (W.D.N.Y. 2014) (dismissing claim against county but rejecting county's argument that plaintiff failed to establish Monell liability because the county is not responsible for developing and implementing the policies, procedures, and regulations pertaining to the conduct of its sheriff's deputies)). Because, as discussed above, liability does not lie under any theory of Monell, it is not necessary to revisit this question here in order to resolve the County's motion.

**D.    Because there is no Monell liability, whether Okongwu has established malicious prosecution claim is not a necessary inquiry.**

The other element of a failure-to-train claim is the existence of a constitutional violation. Monell does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation. Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) (citing Monell, 436 U.S. at 694 (involving a policy that was "the moving force of the constitutional violation")); see also City of Canton v. Harris, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) (involving a failure to train municipal employees that led to the constitutional injury). But here, because there is no theory under which the County could be held liable for any violation Okongwu may have suffered, this Court need not address the parties' arguments about whether a jury could find that Okongwu was subjected to malicious prosecution in violation of his constitutional rights.

## IV.  CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is granted. Because a reasonable jury could not find that any sheriff's deputies who interacted with Okongwu's daughters acted pursuant to a policy of Erie County, summary judgment is granted to Erie County.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 66) is GRANTED.

The Clerk of Court is hereby DIRECTED to close this case.

SO ORDERED.

Dated:      March 23, 2021
            Buffalo, New York

                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge