UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EMEKA DOMINIC OKONGWU,

        Plaintiff,

        v.

COUNTY OF ERIE,

        Defendant.

**DECISION AND ORDER**

14-CV-832S

## I.  INTRODUCTION

Presently before this Court is Plaintiff Emeka Okongwu's motion asking this Court to reconsider its March 23, 2021 decision granting summary judgment to Erie County. By implication, Okongwu also asks this Court to revisit its decisions of September 7, 2016, and June 22, 2017, in which it dismissed most of Plaintiff's civil rights claims against various law enforcement, social service, and medical defendants. Okongwu alleges that he recently obtained new evidence that allows him to "fully present his case." (Docket No. 74-2 at p. 2.) He therefore also moves for leave to file a third amended complaint incorporating this new evidence. For the following reasons, all of Okongwu's motions will be denied.

## II.  BACKGROUND

This case stems from Okongwu's long imprisonment due to what he claims are his false arrest and malicious prosecution for sex crimes against his two daughters. (Docket No. 66-11 at p. 2; Certificate of Discharge, Docket No. 66-12 at p. 2.)

1

**A.       Allegations**

The following is taken from Okongwu's proposed Third Amended Complaint, except where noted. (See Docket No. 74-3.) In 1984, Okongwu and his "traditional Nigerian wife," Doris Agbala, had twin daughters. (Id., ¶ 14.)  After suffering medical problems, Agbala returned to Nigeria, leaving Okongwu in charge of raising his daughters. (Id., ¶ 16-17.) Okongwu relied on babysitters to help take care of his daughters. (Id., ¶ 18.) One babysitter alleged that Okongwu sexually abused his toddler-age twins. (Id., ¶ 20.) In 1988, Okongwu was exonerated of these allegations after a trial in Erie County Family Court. (Id., ¶ 21.) Okongwu's daughters were then placed in foster care. (Id., ¶ 22.)

The girls' foster mother, Ollie McNair, subsequently reported to the police "that once she came into the children's room and observed them playing on top of each other, and that when questioned what they were doing, they allegedly said that it was a simulation of what Daddy did to them when they visited him." (Id., ¶¶ 25-26.) Okongwu alleges that a criminal action was initiated solely based on these allegations. (Id., ¶ 26.) He was ultimately indicted on multiple criminal counts. (Id., ¶ 27.) Okongwu alleges that Erie County Sheriff Timothy Howard failed to properly investigate the claims against him. (Id., ¶ 42.) He further alleges that the district attorney, Frank Sedita, and others in his office, dictated to Buffalo police officers and Erie County deputy sheriffs what kind of evidence to collect. (Id., ¶¶ 46-47.) Okongwu also alleges that Sheriff's deputies, police officers, and assistant district attorneys all coached and coerced his daughters to testify falsely against him, threatening them with deportation to Nigeria if they did not cooperate. (Id., ¶¶ 47-50.)  He alleges that all of these practices were part of policies of the District

Attorney's office and Buffalo Police Department. (Id., ¶¶ 67-69.)

Okongwu was convicted in New York state court of rape in the first degree, sodomy in the first degree, incest, sexual abuse in the first degree, endangering the welfare of a child, and harassment. (People v. Okongwu, 71 A.D.3d 1393 (App. Div. 4th Dep't.), Docket No. 66-11 at p. 2.) He was sentenced to 35-107 years. (Docket No. 74-3, ¶ 28.) On March 19, 2010, the New York Appellate Division, Fourth Department, vacated his conviction and sentence. (Id., ¶ 33.) In documents submitted opposing Erie County's motion for summary judgment, Okongwu clarified that his conviction was overturned on the basis of ineffective assistance of counsel. (Erie County Statement of Material Facts, Docket No. 66-2 at p. 2; Okongwu Statement of Undisputed Facts, Docket No. 69-1 at p. 2.) The Fourth Department found that due to Okongwu's counsel's failure to proffer favorable evidence or call an expert—combined with the inconsistent testimony of his young daughters—there was "reasonable evidence that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (People v. Okongwu, 71 A.D.3d 1393, Docket No. 66-11.)

After Okongwu's conviction was overturned, Erie County Assistant District Attorney Michael Cooper kept him in jail for an additional 2 years while attempting to convince Okongwu's daughters to testify against him again. (Docket No. 74-3, ¶ 49.) On November 22, 2021, while he was being held in the Erie County Holding Center ("ECHC"), Okongwu was assaulted by a fellow prisoner. (Id., ¶¶ 30-31.) When Okongwu was released, ECHC did not return his paperwork, including legal documents and personal mementos. (Id., ¶ 85.)

**B.    Procedural History**

Okongwu initiated this action pro se in federal court on October 8, 2014, asserting multiple constitutional claims against multiple defendants. (Docket No. 1.) After being granted leave to proceed in forma pauperis, he filed an Amended Complaint on October 15, 2015. (Docket No. 6.) In his Amended Compliant, Okongwu claimed that he was subjected to false arrest and malicious prosecution when Erie County District Attorneys, Buffalo police officers, and Erie County Sheriff's deputies coached and coerced his daughters to testify falsely against him, including by threatening them with deportation to Nigeria if they did not cooperate. He claimed that Erie County, the Erie County Sheriff's Department, Erie County Sheriff Timothy Howard, the Buffalo Police Department, and the City of Buffalo all had a policy or custom of failing to train their employees not to coerce witnesses to testify falsely, and were therefore liable as well. He alleged that Sheriff Howard and Barbara Leary, an official at ECHC, failed to protect him from being assaulted by a fellow inmate at ECHC.  He also asserted that Leary was responsible for the loss of his paperwork at ECHC, including important legal documents and family mementos. He brought additional claims against various medical and social service personnel who are not the subjects of the instant motion.

On September 7, 2016, this Court screened Okongwu's amended complaint pursuant to 28 U.S.C. § 1915 (e)(2)(B) and dismissed many of his claims. (Docket No. 12.) It dismissed claims alleging a civil conspiracy by his daughters' foster parent and various medical professionals, finding that Okongwu had not adequately pled their personal involvement but granting him leave to amend to plead such facts. (Docket No. 12 at p. 5.) It dismissed Okongwu's claims against the Erie County Sheriff's Department, Erie County District Attorney's Office, and Erie County Department of Social Services,

finding that named Defendant Erie County was the proper party for any of Okongwu's claims against the other entities.  (Docket No. 12 at p. 7.) This Court dismissed Okongwu's claims against the City of Buffalo Police Department, finding that the City of Buffalo was the proper defendant for claims against the police department. This Court then dismissed with leave to replead Okongwu's claims against Erie County and the City of Buffalo, finding that Okongwu had not adequately pled their municipal liability. This Court dismissed with prejudice Okongwu's claims against New York and the New York Department of Corrections and Community Services, finding them barred by the Eleventh Amendment. (Id. at p. 9.) It permitted him to replead his claims against Barbara Leary, an official at ECHC, and numerous John Doe employees of Erie County Jail and NY DOCCS. (Id.)

This Court dismissed Plaintiff's HIPAA claim because HIPAA does not provide a private right of action. It allowed him to replead his Civil Racketeering claims. (Id. at p. 10-11.)  It found that there was no foster parent liability so it dismissed Ollie McNair. This Court dismissed Okongwu's claims against individual prosecutors Dillion, Bridge, Cooper, and John Does 1-10 as barred by prosecutorial immunity unless he could allege that they acted outside their prosecutorial roles.  (Id. at p. 11.)

Okongwu filed a Second Amended Complaint ("SAC") on October 14, 2016. (Docket No. 13.) As is relevant to the instant motion, his SAC named as defendants Erie County, the City of Buffalo, District Attorney Frank Sedita, ADA Carol Bridge, ADA Michael Cooper, Sheriff Timothy Howard, and Barbara Leary, an official of the Erie County Holding Center. His SAC also lists other defendants who were later dismissed and against whom he does not seek to reinstate claims through the instant motions: foster

parent Ollie McNair, Jen Heary, an official of Child and Adolescent Treatment Services of Buffalo, Dr. Stephen Lazoritz, a doctor at Children's Hospital of Buffalo, and Michael Flaherty, an assistant District Attorney. (Docket No. 13.) Okongwu's SAC also failed to name some of the original defendants in his Amended Complaint, so they were removed. Significantly for the instant motion, this included City of Buffalo Police Officer Marcia Scott. (See Second Amended Complaint, Docket No. 13.)

On June 22, 2017, this Court screened Plaintiff's SAC pursuant to 28 U.S.C. § 1915 (e)(2)(B). (Docket No. 15.) In its decision and order, this Court dismissed all but one of the remaining claims and defendants. It dismissed Okongwu's due process claims, claims of false arrest and false imprisonment, claims of malicious prosecution, claims of conspiracy and RICO violations, and failure to intervene and protect against all Defendants except the County of Erie.

Importantly for Plaintiff's instant motion, this Court found that, even as amended, Okongwu had not stated a claim against the three named members of the district attorney's office, Angelo Sedita, Michael Cooper, and Carol Bridge. This Court found that they enjoyed prosecutorial immunity from suit for malicious prosecution for any conduct in preparing witnesses for trial. (Docket No. 15 at p. 7-9.)

This Court further found that, from the face of the SAC, it was clear that probable cause to arrest Okongwu existed. This, in addition to Okongwu's failure to allege any facts indicating Sheriff Howard's actual malice, doomed his false arrest and malicious prosecution claims against Howard. (Id. at p. 11.) This Court did allow Okongwu's failure-to-train claim to proceed against Erie County for its alleged failure to train Erie County Sheriff's deputies not to coach witnesses to testify falsely.

The case was referred to the late Magistrate Judge Hugh B. Scott, and, after many extensions of time, the parties confirmed that discovery was complete on May 13, 2020. (Docket No. 65.) Erie County moved for summary judgment on August 2, 2020, and on March 23, 2021, this Court granted the motion, holding that Okongwu had not raised a genuine issue of material fact as to the existence of any county custom or policy of failing to train Sheriff's deputies in proper preparation of witnesses. (Docket No. 72.)

Okongwu now asks this Court to vacate its March 23, 2021 order and allow him to file a Third Amended Complaint. He asserts that new evidence in his possession warrants this relief. His proposed Third Amended Compliant contains claims not only against Erie County, but against defendants that this Court dismissed in earlier orders or whom he failed to include in later complaints: Sheriff Timothy B. Howard, Barbara Leary, Carol Bridge, Frank Sedita III, Michael Cooper, the Buffalo Police Department, the City of Buffalo, and Buffalo police detective Marcia Scott. (See Proposed Third Amended Complaint, Docket No. 74-2 at p. 1.)

## III.  DISCUSSION

Okongwu asserts that he has obtained new evidence that he had sent to a friend for safekeeping. He claims that this new evidence allows him to provide sufficient factual material to support his claims. He argues that, because he could not independently remember the details in this evidence, and because he could not access this information until his friend sent it to him—apparently sometime after the entry of this Court's March 23, 2021 order—he will suffer manifest injustice if this Court does not permit him to reinstate his claims.

A.     **Rule 59**

  **1. Legal Standard**

Federal Rule of Civil Procedure 59 (e) allows a party, within 28 days of the entry of judgment, to file a motion to amend or alter a judgment against it. To succeed on a motion for reconsideration under Rule 59 (e), the movant must demonstrate that the Court overlooked "controlling law or factual matters" that had been previously put before it. Papadopoulos v. US Gov't (FBI), No. 19-CV-4597 (LLS), 2019 WL 2498266, at *1 (S.D.N.Y. June 17, 2019). Relief can also be granted to correct a clear error or prevent manifest injustice.  Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc., 38 F.3d 1279, 1287 (2d Cir. 1994) (quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)).

The rule is not, however, a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple. Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998). Nor is it "an opportunity for a party to 'plug[ ] the gaps of a lost motion with additional matters.'" Cruz v. Barnhart, No. 04 Civ. 9794 (DLC), 2006 WL 547681, at *1 (S.D.N.Y. Mar. 7, 2006) (quoting Carolco Pictures Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988)). "It is well established that the rules permitting motions for reconsideration must be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the [c]ourt." In re Gen. Motors LLC Ignition Switch Litig., No. 14-MC-2543, 2017 WL 3443623, at *1 (S.D.N.Y. Aug. 9, 2017).

The decision to grant a Rule 59 (e) motion falls within the sound discretion of the court.  New York v. Holiday Inns, Inc., No. 83-CV-564S, 1993 WL 30933, at *4 (W.D.N.Y.

1993).  Relief under Rule 59 (e) "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  Universal Trading & Inv. Co. v. Tymoshenko, No. 11 Civ. 7877 (PAC), 2013 WL 1500430, at *1 (S.D.N.Y. Apr. 10, 2013) (citing Parrish v. Sollecito, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003)).

### 2.  Okongwu's Rule 59 (e) motion fails

Okongwu filed the instant motion on March 30, 2021. (Docket No. 74.) It was therefore filed within 28 days of only one judgment of this Court, the decision and order granting summary judgment to Erie County on Okongwu's claim that it failed to adequately train Sheriff's deputies. (See Docket No. 72.)  Insofar as Okongwu seeks relief under Rule 59 as to any older decisions and orders, his motion is denied as untimely.

Okongwu seeks amendment of this Court's March 23, 2021, judgment based on the existence of "new evidence" and the risk of "manifest injustice" if he cannot tell his full story by filing another amended complaint. But he does not specify the nature of his "new evidence." After a careful reading of his proposed Third Amended Complaint, which is based on this new evidence, this Court does not discern any new facts that would undermine this Court's finding, at the summary judgment stage, that Okongwu did not establish a genuine issue of material fact regarding a County policy or custom of failing to train Sheriff's deputies.[1]  It contains nothing new regarding a County custom of failing to train Sheriff's deputies in preparing witnesses for trial.

---

[1] The new evidence this Court can discern includes the details of other alleged abuses by the City of Buffalo, specifics of how the prosecutors from the District Attorney's office collaborated with Buffalo police detective Marcia Scott and unnamed Sheriff's deputies, and some details about his assault in ECHC and Barbara Leary's alleged failure to protect him. There are other changes from the Second to the Third Amended Complaint, but these appear to be more attempts to re-plead his causes of action based on the Court's prior orders. For example, after repeatedly stating that district attorneys coached his daughters regarding their *testimony at trial*, Okongwu now alleges that they gave his daughters false statements to memorize during their *investigation of the case*. This appears to be a rewriting to avoid the doctrine of prosecutorial immunity, not the result of the discovery of new facts.

Instead of presenting new or overlooked evidence, Okongwu appears to be attempting to take a "second bite at the apple." Sequa, 156 F.3d at 144. This Court will therefore decline to grant his Rule 59 motion as to its March 23, 2021 decision.

### B.      Rule 60

#### 1.  Legal Standard

Rule 60 (b) provides that a court may relieve a party from a final judgment, order, or proceeding for the following reasons: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59 (b); (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60 (b).

"A motion under Rule 60 (b) must be made within a reasonable time—and for reasons (1), (2), and (3), no more than a year after the entry of the judgment or order." Fed. R. Civ. P. 60 (c)(1).

Motions for relief under Rule 60 (b) are disfavored, and are reserved for exceptional cases. United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir.2001) ("A motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances."); Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir.1986) ("Since 60 (b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances."). "The burden of proof is on the party seeking relief from judgment." Int'l Bhd. of Teamsters, 247 F.3d at 391. A party seeking

relief pursuant to Rule 60 (b) normally must: "(1) support its motion with 'highly convincing' evidence; (2) show good cause for its failure to act sooner; and (3) prove that granting the motion will not impose any undue hardship on the other parties." Canini v. United States DOJ Fed. Bureau of Prisons, No. 04 Civ. 9049, 2008 WL 818696 (S.D.N.Y. Mar. 26, 2008) (citing Kotlicky v. United States Fidelity & Guar. Co., 817 F.2d 6, 9 (2d Cir. 1987)).

Okongwu bases his motion on the need to prevent manifest injustice, invoking this Court's broad equitable powers under Rule 60 (b)(6). This Court will also consider his arguments as invoking Rule 60 (b)(2) because he refers to the existence of new evidence.

A party may move for relief from a final judgment based upon "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under [Federal Rule of Civil Procedure] 59(b)." Fed. R. Civ. P. 60 (b)(2). As noted above, courts require "that the evidence in support of the motion to vacate a final judgment be highly convincing, that a party show good cause for the failure to act sooner, and that no undue hardship be imposed on other parties." Howard v. MTA Metro-N. Commuter R.R., 866 F. Supp. 2d 196, 213–14 (S.D.N.Y. 2011) (quoting Kotlicky, 817 F.2d at 9).

Rule 60 (b)(6) "is a 'grand reservoir of equitable power to do justice in a particular case[,]' … [b]ut that reservoir is not bottomless." Stevens v. Miller, 676 F.3d 62, 67 (2d Cir. 2012) (quoting Matarese v. LeFevre, 801 F.2d 98, 106 (2d Cir.1986)). A party seeking to avail itself of the relief under Rule 60(b)(6) must "demonstrate that extraordinary circumstances warrant relief." Stevens, 676 F.3d at 67 (internal quotations and citations omitted); see also In re Terrorist Attacks on September 11, 2001, 741 F.3d 353, 356 (2d

11

Cir. 2013) (accord).

"Relief pursuant to Rule 60 (b)(6) is reserved for extraordinary circumstances outside the purview of Rule 60 (b)(1)-(5)." Canale v. Manco Power Sports, LLC, No. 06 CIV. 6131, 2010 WL 2771871, at *4 (S.D.N.Y. July 13, 2010); see also Int'l Bhd. of Teamsters, 247 F.3d at 391–92 ("[I]f the reasons offered for relief from judgment can be considered in one of the more specific clauses of Rule 60 (b), such reasons will not justify relief under Rule 60 (b)(6)"). Of particular concern is that parties may attempt to use Rule 60 (b)(6) to circumvent the one-year time limitation in other subsections of Rule 60 (b). Stevens, 676 F.3d at 67 (citing First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda– Permanent Mission, 877 F.2d 189, 196 (2d Cir.1989)).

### 2. Okongwu's Rule 60 (b) motion fails

#### a. Rule 60 (b)(2)

Any arguments arising under Rule 60 (b)(2) can apply only to this Court's March 23, 2021 order, because it is the only one that falls within one year of Okongwu's motion. See Rule 60 (c).

As discussed above, Okongwu provides absolutely no details about his "new evidence," so that this Court is unable to determine whether it is admissible, let alone "highly convincing." Having read Okongwu's proposed Third Amended Complaint, which he seeks leave to file based on the existence of new evidence, this Court does not find any new facts that are likely to lead to a different outcome.

Nor does Okongwu address the issue of due diligence.  Defendant correctly notes that discovery on Okongwu's claim against Erie County proceeded from June 27, 2018, to May 13, 2020, when the parties confirmed that discovery was complete. (See Docket

Nos. 33, 65). At no time did Okongwu address the issue of a lack of evidence, nor seek to vacate this Court's earlier decisions and pursue discovery against the previously dismissed defendants. This Court does not find, therefore, that Okongwu has demonstrated diligence in attempting to locate information he needed for his case.

Finally, reopening this issue after Erie County has in good faith sought and been granted summary judgment would impose a hardship on Erie County, and even more so on the other parties who were dismissed in 2016 and 2017. Together, these factors weigh against granting Okongwu's motion under Rule 60 (b)(2).

### b. Rule 60 (b)(6)

Okongwu claims that the "withholding of documents by defendants" is an extraordinary circumstance that warrants relief from this Court's judgment pursuant to Rule 60 (b)(6). As an initial matter, this Court notes that it is an unfortunate reality that the papers of incarcerated persons are frequently lost by the facilities in which they are housed. Federal courts frequently see claims, like Okongwu's, seeking damages under the Fourteenth Amendment for their losses. See, e.g., Berg v. New York, No. 21-CV-3293 (LTS), 2021 WL 2435450, at *1 (S.D.N.Y. June 14, 2021); Michael Jones v. D.O.C.C.S., et al., No. 20-CV-1682-LJV, 2021 WL 1910239, at *10 (W.D.N.Y. May 12, 2021); Mejia v. New York City Dep't of Corr., No. 96-CV-2306 JG, 1999 WL 138306, at *4 (E.D.N.Y. Mar. 5, 1999). These claims are regularly denied when state law provides an adequate post-deprivation remedy, based on the Supreme Court's holding on this issue. See Hudson v. Palmer, 468 U.S. 517, 533, 104 S. Ct. 3194, 3204, 82 L. Ed. 2d 393 (1984).

Thus, the fact that Okongwu's documents were lost is not an "extraordinary circumstance." Nor is the fact that he did not have access to them evidence of manifest

injustice. He does not state that the lost documents contained the "new evidence" that he now seeks to incorporate. Nor does he explain why he never contacted his friend before this Court's March 23, 2021 decision, or why he never pursued any other means of obtaining information.

In essence, Okongwu's 60 (b)(6) claim regarding the withholding of his documents is a (b)(2) claim regarding his need to present new evidence. But Rule 60 (b)(6) should not be used to make arguments that could be made under other subsections, or to circumvent the time limits for motions under other subsections.  Stevens, 676 F.3d at 67.

Okongwu claims he only received the evidence, from "a friend that recently came forward with documents Plaintiff had been sending to him during his incarceration," between some point shortly before March 23, 2021, and the filing of the instant motion on March 30, 2021. (Docket No. 77 at p. 3; Docket No. 74-2 at p. 2.) It stretches credulity that there was no way for Okongwu to contact this person and request these documents at any point before the entry of this Court's order granting summary judgment to Erie County. At any rate, Okongwu offers no explanation for the timing of his receipt of the evidence. This fact, combined with Okongwu's failure to address his lack of information during discovery, demonstrates a lack of diligence.

Finally, this Court finds that reopening its decisions from 2016 and 2017 would present an undue hardship to all defendants. Erie County, which participated in discovery, vigorously pursued summary judgement, and now has the opportunity to oppose Okongwu's instant motion, would suffer hardship from having to relitigate this action. And the parties dismissed in the 2016 and 2017 orders would suffer considerable hardship were Okongwu's claims against them to be reinstated, particularly on the basis of such

scant new evidence as this Court can discern from the proposed TAC. Only Erie County was ever served in this action; this Court assumes that the parties Okongwu now seeks to add have no knowledge of this action. To permit Okongwu to file and serve a TAC now, particularly given the lack of extraordinary circumstances warranting this relief, would be contrary to the interests of justice.

### C.     Rule 15 (a) Motions to Amend

Okongwu asks this Court, if it grants his request for relief from its judgments, to grant him leave to amend his complaint and incorporate his new evidence.

Courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15 (a) (2). Where, however, a party does not seek leave to file an amended complaint until after judgment is entered, "Rule 15's liberality must be tempered by considerations of finality." Williams v. Citigroup Inc., 659 F.3d 208, 213 (2d Cir. 2011). As a procedural matter, "[a] party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to [Rules] 59(e) or 60(b)." Id. at 212–13; see also Nat'l Petrochem. Co. of Iran v. M/T Stolt Sheaf, 930 F.2d 240, 245 (2d Cir.1991) ("Unless there is a valid basis to vacate the previously entered judgment, it would be contradictory to entertain a motion to amend the complaint.")).

As discussed above, this Court does not find a valid basis under either Rule 59 or 60 to vacate its previously entered judgments. It therefore denies Okongwu's motion to amend.

## IV.  CONCLUSION

Having carefully considered Okongwu's motion, this Court does not find a compelling reason to amend or vacate any of its previous judgments. Although Okongwu refers to the existence of "new evidence," it is apparent that he simply seeks to present his case under a new theory. Relief under Rule 59 is therefore not warranted. Nor does Okongwu demonstrate extraordinary circumstances warranting equitable relief under Rule 60 (b). Because it denies his motions for reconsideration, this Court will also deny his motion to amend his complaint. For all these reasons, this Court denies Okongwu's motion for reconsideration and motion for leave to amend his complaint. (Docket No. 74.)

## V.  ORDERS

IT HEREBY IS ORDERED, that Plaintiff's Motion for Reconsideration (Docket No. 74) is DENIED.

SO ORDERED.

Dated:       October 1, 2021
             Buffalo, New York

s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge